IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENDOHEART AG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 14-1473-LPS-CJB |
| | ) |
| EDWARDS LIFESCIENCES CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

At Wilmington this **6th day of November 2015**, having reviewed proposed intervenor Brigham and Women's Hospital's ("BWH") Motion to Intervene ("Motion"), (D.I. 45), and the papers filed in connection therewith, the Court recommends that the Motion be GRANTED based on the following reasoning.[1]

### I. BACKGROUND

1. With its Motion, BWH seeks to intervene in the case pursuant to Federal Rule of Civil Procedure 24. BWH does so in order to be able to press its claim (set out in its Complaint in Intervention and For Declaratory Judgment of Patent Ownership, hereafter referred to as the "Complaint") that it is entitled to a declaratory judgment that it is the owner of United States Patent No. 8,182,530 ("the '530 patent") and to certain patent applications related to the '530

---

[1] District courts in this Circuit have treated a ruling on a motion to intervene as a non-dispositive ruling. *In re Gabapentin Patent Litig.*, 312 F. Supp. 2d 653, 661 (D.N.J. 2004); *Black v. Premier Co.*, No. CIV.A. 01-4317, 2002 WL 31045854, at *1 n.4 (E.D. Pa. Sept. 12, 2002); *United States v. W.R. Grace & Co.-Conn.*, 185 F.R.D. 184, 187 (D.N.J. 1999). The United States Court of Appeals for the Third Circuit has apparently not decided the issue, however, *see Dewey v. Volkswagen Aktiengesellschaft*, 558 Fed. App'x 191, 198-99 (3d Cir. 2014), and some other federal courts around the country have found such a ruling to be dispositive, *see Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1322 (11th Cir. 2013). In an abundance of caution, the Court will title this document as a "Report and Recommendation."

patent (collectively, "the inventions"). (D.I. 45; D.I. 46, ex. 1) Chief Judge Leonard P. Stark has referred the Motion to the Court for resolution. (D.I. 48)

2. The '530 patent is the patent-in-suit in this case. Plaintiff Endoheart AG ("Plaintiff"), who claims that it (not BWH) is the rightful owner of the patent, is asserting the patent against Defendant Edwards Lifesciences Corporation. (D.I. 1)

3. BWH asserts that its ownership rights to the inventions arise out of the terms of an "Intellectual Property Policy" ("the IP Policy") that the patent's inventor, Dr. Christopher Huber, was subject to while he worked at BWH in late 2004 through 2005. The IP Policy is attached as Exhibit A to BWH's Complaint. (D.I. 46, ex. 1 at ex. A)

## II. DISCUSSION

4. The Court focuses herein on BWH's argument that it is entitled to intervene as of right, pursuant to Rule 24(a). (D.I. 46 at 3-7) Rule 24(a) provides that upon timely application, an applicant shall be permitted to intervene in an action when the applicant "(2) claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The United States Court of Appeals for the Third Circuit has interpreted Rule 24(a)(2) to require proof of four elements from the applicant seeking intervention: (1) a timely application for leave to intervene; (2) a sufficient interest in the litigation; (3) a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action, and (4) inadequate representation of the prospective intervenor's interest by existing parties to the litigation. *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998); *see also Wharton v.*

2

*Danberg*, C.A. No. 12-1240-LPS, 2014 WL 4925227, at *1 (D. Del. Sept. 29, 2014).

5. At oral argument, the parties confirmed that they both agree that, in resolving the Motion, the Court must (1) consider only the contents of the Complaint (plus exhibits attached thereto, documents integral thereto, or documents explicitly relied upon therein); (2) accept any non-conclusory allegations contained in these sources as true; and then (3) determine whether the proposed intervenor (here, BWH) has made out a *prima facie* case that intervention is permissible. (D.I. 68 at 23-25, 33-34) Although the parties advise that the Third Circuit has not directly addressed the standard for consideration of potentially disputed facts set forth in a motion to intervene, (*see* D.I. 54 at 3), other circuit courts have relied on the principles described above in this context, *see Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001); *cf. United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) ("A motion to dismiss a complaint in intervention is reviewed under the same standard applicable to consideration of a motion to dismiss the original plaintiffs' complaint.").[2] The Court agrees with the parties that these are the appropriate principles to implement regarding this threshold-type motion, and will proceed to apply them here.

6. Turning now to the first element of proof regarding a motion to intervene, Plaintiff argues that BWH cannot demonstrate that the Motion was timely filed. (D.I. 51 at 8-9) It asserts that grant of the Motion would threaten the orderly procedure of the case schedule, and,

---

[2] And indeed, district courts within the Third Circuit have routinely held that in resolving a motion to intervene, a court must accept the non-conclusory allegations made in support thereof. *Palladino v. Corbett*, Civil Action No. 13-5641, 2014 WL 830046, at *1 n.1 (E.D. Pa. Mar. 4, 2014); *Porter v. T.D. Bank, N.A.*, Civil Action No. 10-7243, 2011 WL 925734, at *2 (E.D. Pa. Mar. 14, 2011); *Olympic Sports Data Servs., Ltd. v. Maselli*, Civil Action No. 07-117, 2008 WL 5377626, at *2 (E.D. Pa. Dec. 22, 2008).

in that regard, notes that the Motion was filed in July 2015—seven months after Plaintiff's Complaint was filed in December 2014 and four months after a schedule was entered in March 2015. (*Id.* at 9) The Third Circuit has listed three factors for a district court to consider regarding the timeliness of such a motion: (1) the state of the proceeding; (2) the prejudice that delay may cause the parties and (3) the reason for the delay. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). But it has also cautioned that in determining whether an application for intervention of right is timely, a court should be "reluctant to dismiss a request for intervention" on the ground that it was untimely filed, since "the would-be intervenor may be seriously harmed if he is not permitted to intervene[.]" *Id.* (internal quotation marks and citation omitted).

7. Keeping the need for such reluctance in mind, the Court does not find the Motion untimely here. While the parties have been proceeding with discovery, the case is not in its late stages; instead, fact discovery does not close until April 22, 2016,[3] a *Markman* hearing will not be held until January 25, 2016, and trial is not scheduled until March 2017. (D.I. 19) Moreover, the issues relating to BWH's declaratory judgment claim appear to be narrowly focused and to require only "limited" discovery. (D.I. 54 at 10)[4] And finally, it appears not seriously disputed that BWH only learned of its alleged ownership rights in the inventions after this litigation was filed, and not long before it filed the present Motion. (D.I. 46 at 5; *id.*, ex. 1 at ¶ 19; D.I. 51 at 1

---

[3] The parties also report that Dr. Huber, who would certainly be an important witness regarding BWH's claim, has yet to be deposed. (D.I. 68 at 19, 55)

[4] In this regard, the Court was comforted by the representation of BWH's counsel at oral argument that were it permitted to intervene, BWH would not seek large-scale changes to the case schedule. (D.I. 68 at 21)

4

n.1; D.I. 54 at 9) Under these circumstances, the Court cannot agree with Plaintiff that BWH's Motion amounts to an untimely attempt to intervene. *See, e.g., Select Retrieval LLC v. AmeriMark Direct LLC*, Civil Action No. 11-812-RGA, Civil Action No. 12-1440-RGA, 2013 WL 3381324, at *2 (D. Del. July 3, 2013) (finding that a motion to intervene was "not untimely" when filed less than four months after the scheduling order was entered and nearly two years before the scheduled trial date); *U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 412 n.9 (W.D. Pa. 2006) (noting, in resolving a motion to intervene, that the motion was timely in that "[t]his case is still in its initial stages, there have been no filings beyond the initial pleadings and the motions sub judice, and discovery is not scheduled to conclude until [three months from the data of the court's decision], as per the Court's Initial Scheduling Order.").

8. Plaintiff's next argument (and its primary argument) implicates elements two, three and four of the test for a motion to intervene. Each of those three elements require that the prospective intervenor has a legal "interest" in the property at issue in the litigation (here, a legal interest in the '530 patent and related applications). *See Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 223 F.R.D. 326, 329 (D.N.J. 2004) (noting that a "claim of ownership of the [patent-in-suit] is such a legal interest[]"). Plaintiff asserts that BWH's Complaint, even viewed in the light most favorable to it, does not make out a viable *prima facie* case that BWH has an ownership interest in the inventions, including the '530 patent. (D.I. 51 at 7-8)

9. In concluding to the contrary— that BWH has, in fact, met its burden here regarding the "legal interest" at issue—the Court need only look to one of BWH's two arguments that implicate the terms of the IP Policy. BWH asserts that Section 5.2.2 of that policy (titled

5

"Related Inventions") provides it with ownership rights to the patent. That section explains that "Inventions conceived or reduced to practice by one or more Members that are not Supported Inventions but that arise out of or relate to the clinical, research, educational or other activities of the Inventor at an Institution" are owned by the Institution. (D.I. 46, ex. 1 at ex. A at 5) It is not disputed that Dr. Huber was a "Member" of BWH during the time period at issue, nor that BWH is an "Institution." The question is whether Dr. Huber's "Inventions" at issue (e.g., those captured in the '530 patent—a patent Dr. Huber applied for while employed by BWH), (D.I. 46, ex. 1 at ¶ 14), can be said to "arise out of or relate to" Dr. Huber's "clinical, research, educational or other activities" while at BWH.

10. The Complaint doesn't say much about what Dr. Huber's "clinical, research, educational or other activities" *were* at BWH, other than to allege that "[i]n 2004 and 2005, Dr. [] Huber was employed as a senior cardiac clinical fellow" at the hospital. (D.I. 46, ex. 1 at ¶ 9) But even Plaintiff seemed to agree (as does the Court) that a fair inference from this allegation and the remainder of the Complaint is that Dr. Huber was deeply involved at BWH in treating heart and heart valve disease, work that involved the implantation of heart valves. (D.I. 68 at 40, 43-44) Considering this, along with the fact that the patent-in-suit claims, *inter alia*, a method of implanting a heart valve (albeit a particular method involving transapical aortic valve implantation), ('530 patent, cols. 21:58-22:6), and that the patent asserts that "[o]f particular interest to the present invention is the treatment of heart valve disease" including stenosis and regurgitation, (*id.*, col. 1:29-33), BWH has made a *prima facie* showing that the "Inventions" at issue "ar[ose] out of or relate[d] to" Dr. Huber's work at BWH. After all, "arise out of" or "relate to" are broad terms.

11. Of course, even amidst this breadth of language, what Dr. Huber's work actually consisted of at BWH and how that relates to the "Inventions" at issue are fact issues that are yet to be finally resolved. But working toward such resolution is what the discovery process is for.

12. Plaintiff's last argument relates to the fourth element of the test for motions to intervene. Plaintiff asserts that BWH has failed to demonstrate that its interests would be inadequately represented by the existing parties to the litigation. (D.I. 51 at 8) This fourth element is satisfied if the applicant shows that representation of its interest "'may be'" inadequate, and the burden of making such a showing "'should be treated as minimal.'" *Princeton Biochemicals, Inc.*, 223 F.R.D. at 329 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). Here, were BWH's Motion denied, then no party would currently be asserting (as BWH does in its Complaint) that BWH is the rightful owner of the patent-in-suit. (D.I. 46 at 7 (noting that "Edwards has not raised [the ownership issue] in the case."); D.I. 68 at 52 (same)) In that scenario, the question of BWH's ownership interest would go unresolved. Thus, even though Plaintiff may have a similar interest to BWH in the patent being found to be valid, it cannot be said that the parties here will adequately represent *all* of BWH's relevant interests. *Cf. Princeton Biochemicals, Inc.*, 223 F.R.D. at 329 (finding that a proposed third party intervenor, who claimed that it owned a patent at issue in a suit between two other parties, would not have its interests in patent ownership adequately protected were it prevented from intervening pursuant to Rule 24(a)).

### III. CONCLUSION

13. Because BWH has met its burden with regard to each of the four elements of the test regarding the grant of a motion to intervene, the Court recommends that the Motion be

GRANTED.

14. This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

15. The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE